IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| CLAUDIA ROHR,<br><br>        Plaintiff,<br><br>    vs.<br><br>BOARD OF APPEALS OF THE COUNTY OF HAWAI‘I,<br><br>        Defendant. | Civil No. 25-00017 MWJS-WRP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

Plaintiff Claudia Rohr, proceeding pro se, brings this action under Title II of the Americans with Disabilities Act (ADA) against the Board of Appeals of the County of Hawai‘i (the Board). Rohr contends that the Board failed to provide accommodations necessary for her to communicate effectively during two public meetings. The parties have filed cross-motions for summary judgment. For the reasons that follow, the court GRANTS Defendant's Motion for Summary Judgment, Dkt. No. 32, and DENIES Rohr's Motion for Summary Judgment, Dkt. No. 40.

## BACKGROUND

This case arises from two administrative hearings concerning Rohr's appeals from decisions of the County of Hawai‘i Planning Department (Planning Department): a January 13, 2023 hearing in Board of Appeals Case No. PL-BOA-2022-000025 (BOA-1),

and a January 12, 2024 hearing in Board of Appeals Case No. PL-BOA-2023-000075

(BOA-2). *See* Dkt. No. 18 (First Amended Complaint (FAC)). Rohr contends that, at

each meeting, the Board denied her, as a person with a disability, "reasonable and

appropriate forms of communication so that she could participate meaningfully in the

meetings." *Id*. at PageID.84. She contends that the Board's failure to provide those

accommodations violated the ADA. *Id*.

Rohr has a hearing impairment and "auditory processing disorder" that limit her

ability to communicate. *Id*. at PageID.87 (FAC ¶ 11). She also has impaired vision in

her left eye due to a history of diabetes. *Id*. According to Rohr, she often relies on

written communication and visual cues, including reading lips and facial expressions

and identifying who is speaking. *Id*. at PageID.87–88 (FAC ¶¶ 11–12). Rohr further

reports that, because of her hearing disability, she has for many years requested

auxiliary aids from County and State agencies, including listening devices, closed

captioning, written materials, transcripts, and preferential seating. *Id*. at PageID.88

(FAC ¶ 14). At each of the two meetings at issue, Rohr requested disability

accommodations that she believed were necessary for her meaningful participation.

Because neither the substance of the underlying appeals nor their procedural history is

relevant here, the court focuses on Rohr's accommodation requests and the Board's

efforts to address them.

2

### A.      The January 13, 2023, Meeting

In BOA-1, Rohr appealed decisions of the Planning Department to the Board, and on January 13, 2023, the Board convened virtually, via Zoom, to adopt a written order memorializing the decision it had reached in November 2022.  Dkt. No. 34-4, at PageID.275.  Each attendee of the meeting appeared in separate windows on the screen. At the start of the meeting, Chair Stacey Aguiar explained that the Board would not consider new proposed language but would instead select from the proposed orders the parties had already submitted.  *Id*. at PageID.284–85.  She also explained that each party would have three minutes to present any final argument.  *Id*.

Board Member David Wiseman then made a series of procedural motions.  When Rohr indicated that she had not followed one of them, Chair Aguiar asked that the motion be repeated, and Member Wiseman explained it several times.  Dkt. No. 34-4, at PageID.284-86.  Rohr responded, "Thank you," and indicated that she understood.  *Id*. at PageID.284.  Rohr then used her full three minutes to present argument, while the Planning Department waived its opportunity to do so.  Dkt. No. 34, Ex. C, County of Hawaiʻi Board of Appeals Hearing—January 13, 2023, at 24:46–27:51, 28:06 ("January 13, 2023 Video").[1]  Rohr nevertheless alleges that she was unable to follow the

---

[1]      *See* County of Hawaiʻi Planning Department, *County of Hawaiʻi Board of Appeals Hearing—January 13, 2023*, YouTube (Jan. 13, 2023), https://www.youtube.com/watch?v=TO2UTV-7GEU (archived recording of live broadcast) ("January 13, 2023 Video") [https://perma.cc/R4JW-CWVS].

substance of the Board's motions and was left with an incomplete understanding of its decision.  Dkt. No. 18, at PageID.96–97 (FAC ¶¶ 40, 44).

After the Board voted, Rohr made two requests.  First, she asked the Board to provide the Planning Department's counsel with an expedited transcript of the meeting.  Second, she requested Member Wiseman's personal notes as an ADA "auxiliary aid."  Dkt. No. 34-4, at PageID.291-93.  The Board denied both requests, explaining that the live-captioned video recording provided an adequate record of the proceedings and that Member Wiseman's unofficial notes were his personal work product.  *Id*.  The Board also noted that Rohr had apparently been recording the meeting on her own end, so she had access to her own recordings, and notes to assist her understanding.  *Id*.  Consistent with the Board's usual practice, a video recording of the meeting, including audio and live captions, was posted to the Board's website and YouTube channel that same day.  Dkt. No. 34-1, at PageID.230.

The Board signed its Findings of Fact, Conclusions of Law, and Decision and Order on February 2, 2023, and served the final order on the parties that day.  Dkt. No. 34-4, at PageID.301-06.  Rohr appealed the Board's decision to the Circuit Court of the Third Circuit, State of Hawaiʻi, which considered her challenges on the merits and affirmed the Board's order.  Dkt. No. 34-8, at PageID.356-70.

//

//

4

###### B.    The January 12, 2024, Meeting

In BOA-2, Rohr again appealed a Planning Department decision to the Board.  By letters dated October 8 and November 8, 2023, she requested disability accommodations for the proceedings, including that the hearing be conducted entirely through Zoom, with each participant appearing on an individual screen.  Dkt. No. 18, at PageID.99.  On November 27, 2023, before the hearing, the Board arranged a meeting with Rohr and the County's ADA Coordinator to discuss and test possible accessibility arrangements. *See id*. (FAC ¶ 51).

The Board ultimately decided to adopt a hybrid format for the meeting:  three laptops connected to the same Zoom session would be positioned in front of the Chair, the Planning Department's side of the table, and the witness stand.  Dkt. No. 34-3, at PageID.236-42.  Rohr's laptop would connect to the same session and be placed beside her, giving her close-up views of the speakers' faces so she could read their lips while accessing Zoom's instant-transcription feature.  *Id*.  In a written recap following the conference, Rohr did not identify any deficiency in the proposed arrangement, although she noted that it remained "untried" under live conditions.  Dkt. No. 34-11, at PageID.384-85.

The Board heard oral argument on the Planning Department's motion to dismiss on January 12, 2024.  Each party was allotted three minutes to argue.  Dkt. No. 34-13, at PasgeID.394.  About one minute into her argument, Rohr—who was wearing earbuds

5

connected to the Zoom session—complained of an audio echo.  Dkt. No. 34, Ex. I,

County of Hawaiʻi Board of Appeals Hearing—January 12, 2024, at 46:52–47:12

("January 12, 2024, Video").[2]  The Board's counsel identified Rohr's earbuds as the

source of the feedback and suggested that, because Rohr was the only speaker at that

point, she could remove them to eliminate the echo.  Rohr declined, stating that she

would be unable to hear herself without them.  Roughly three minutes into her

argument, Rohr stated, "This is ridiculous," removed the earbuds, and continued her

presentation.  *Id.* at 48:49.

Rohr ultimately presented a sustained oral argument lasting approximately eight

minutes and seventeen seconds.  *Id*. at 45:44–54:43.  She also engaged in a direct

colloquy with Board Member Scott Trefethen.  *Id*. at 56:03–56:33.  When Member

Trefethen later spoke away from his microphone, Rohr asked him to use the

microphone, which he did.  *Id*. at 1:00:10.  Rohr nevertheless alleges that the echo she

experienced early in her argument prevented her from concentrating and participating

meaningfully in the meeting.  Dkt. No. 18, at PageID.101 (FAC ¶¶ 55–56).

Rohr thereafter filed this action based on her experiences at both meetings.

Following discovery, the parties filed cross-motions for summary judgment.  The court

---

[2]    *See* County of Hawaiʻi Planning Department, *County of Hawaiʻi Board of Appeals Hearing—January 12, 2024*, YouTube (Jan. 12, 2024), https://www.youtube.com/watch?v= H26r8TwTYd8 (archived recording of live broadcast) ("January 12, 2024, Video") [https://perma.cc/REC7-FD6Q].

finds these motions suitable for disposition without a hearing, as permitted by Local

Rule 7.1.(c).

## STANDARD OF REVIEW

Summary judgment is warranted when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The moving party bears the initial burden of "informing the district court of the

basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

*Corp.*, 477 U.S. at 323 (cleaned up).  Once the movant has met this burden, the burden

shifts to the nonmoving party, who must "go beyond the pleadings and, by [its] own

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324

(cleaned up).

"When there are cross-motions for summary judgment, the court must determine

the merits of each motion and resolve all reasonable inferences against [the] moving

party."  *Phoenix Solutions, Inc. v. Sony Elecs., Inc.*, 637 F. Supp.2d 683, 690 (N.D. Cal.

2009).  The court does not weigh the evidence, but only determines, after reviewing the

record as a whole, whether there is a genuine issue for trial.  *Tolan v. Cotton*, 572 U.S.

650, 657 (2014).  A dispute is "genuine" if the evidence is such that a reasonable jury

7

could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. And a fact is "material" only if it could affect the outcome of the case. *Id.*

## DISCUSSION

### A.     Overview of Title II of the ADA

Although the FAC and Rohr's summary judgment filings refer at times to "due process," *see, e.g.*, Dkt. No. 18, at PageID.84, the counts and prayer for relief Rohr raises in her FAC assert only violations of Title II of the ADA and its implementing regulations. *See id*. at PageID.90–103. Nor do Rohr's filings identify the elements of, or offer any separate analysis supporting, a constitutional claim. The court therefore construes the FAC as asserting only Title II claims.

Title II provides that no qualified individual with a disability shall, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail in a lawsuit brought under this Title, a plaintiff must show that (1) she is a "qualified individual with a disability"; (2) she was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity"; and (3) "the exclusion, denial, or discrimination was by reason of [her] disability." *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (cleaned up).

Title II's implementing regulations—the validity of which are not in dispute—require public entities to ensure that communications with individuals with disabilities "are as effective as communications with others" and to furnish appropriate auxiliary aids when necessary to afford those individuals an equal opportunity to participate in and benefit from the entity's services, programs, or activities.  28 C.F.R. § 35.160(a)(1), (b)(1).  In selecting an auxiliary aid, the entity must give "primary consideration" to the individual's request.  *Id.* § 35.160(b)(2).  Although the entity need not furnish the precise aid requested, if it declines to do so, it bears the burden of showing that another effective means of communication exists or that the requested aid is otherwise not required.  *Updike*, 870 F.3d at 958.  The relevant question is whether the aids provided were sufficient to prevent any "real hindrance" in the individual's ability to exchange information.  *Mayfield v. City of Mesa*, 131 F.4th 1100, 1110 (9th Cir. 2025).  Compensatory damages additionally require proof of intentional discrimination, which the Ninth Circuit measures under a deliberate indifference standard.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001).

### B.  The Board Is Not Entitled to Summary Judgment by Default

Before turning to the merits of the cross-motions for summary judgment, the court must consider a threshold procedural argument.

As noted, the parties have filed cross-motions for summary judgment.  *See* Dkt. Nos. 32, 40.  But while the Board filed a memorandum in opposition to Rohr's motion,

Dkt. No. 48, and a reply in support of its own, Dkt. No. 56, Rohr did not file a memorandum in opposition to the Board's motion, instead filing only an amended concise statement of facts in opposition. Dkt. No. 53. The court provided Rohr an additional opportunity to file an opposition, *see* Dkt. No. 57, but as of the date of this order, she has not done so.[3]

The Board urges the court to treat that silence as a waiver and to grant its motion on that basis alone. Dkt. No. 56, at PageID.1083-86. The court declines to do so. "[U]nder the Federal Rules, a motion for summary judgment may not be granted based on a failure to file an opposition to the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). Granted, an "opposing party's failure to respond to a fact asserted in the motion permits a court to 'consider the fact undisputed for purposes of the motion.'" *Id.* (quoting Fed. R. Civ. P. 56(e)(2)). But the court may not "deem a non-movant's failure to respond a complete abandonment of its opposition to summary judgment." *Id.* Ultimately, even in the absence of an opposition, the Board must show that it is entitled to summary judgment on the merits.

---

[3]    Rohr's amended concise statement raises two theories not pleaded in the FAC: that the Board failed to timely provide a transcript of the November 4, 2022 contested-case hearing, and that it denied her request to recall a witness as an accommodation. Dkt. No. 53, at PageID.999-1000. Because a plaintiff may not amend her complaint through arguments first raised at summary judgment—particularly in a concise statement intended only to identify material facts—the court does not consider those theories. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006); LR 56.1.

And because Rohr is a self-represented litigant, it is not even appropriate to treat her as not having filed an opposition.  Although she has not filed an opposition, she has filed a cross-motion of her own, Dkt. No. 40, as well as an amended concise statement of facts, Dkt. No. 53.  A pro se litigant's filings must be liberally construed.  Doing so here, the court treats Rohr's filings as, in substance, Rohr's opposition to the Board's motion.  The court therefore considers the arguments and evidence Rohr presented in both in deciding whether the Board's motion should be granted.  Moreover, in resolving the cross-motions, the court has considered all exhibits submitted by both parties in support of their respective motions, and it has reviewed the video recordings of the two meetings at issue.

With these observations, the court turns to a consideration of the parties' cross-motions, beginning with that of the Board.

### C.      The Board Is Entitled to Summary Judgment on the Merits

#### 1.      Summary Judgment Is Warranted on Rohr's Claims Concerning the January 2023 Meeting

Rohr's claim arising from the January 13, 2023 meeting has three parts.  She contends that she could not follow the procedural motions made during the meeting, that the Board did not provide a written transcript before her time to seek review expired, and that the Board improperly denied her post-vote requests for an expedited transcript and Member Wiseman's notes.  The court agrees with the Board that none of these theories presents a triable issue.

11

Begin with the meeting itself.  The record establishes that the Board tried to handle Rohr's hearing limitations as they arose.  At the outset, the Chair explained that the Board would not consider new proposed language and that each party would have three minutes for final argument.  Dkt. No. 34-4, at PageID.284-86.  When Rohr stated that she had not followed Member Wiseman's motion, the Board repeated and explained it several times.  Rohr then thanked the Board and confirmed that she understood.  *Id.* at PageID.286.  She also used her full allotted time to argue her position.  January 13, 2023 Video at 24:46–27:51.  Rohr did not identify that she failed to comprehend the Board members' statements, or that she was prevented from advocating her position during her argument.  On this record, no reasonable jury could find a "real hindrance" in the exchange of information between Rohr and the Board.  *Mayfield*, 131 F.4th at 1110.

Rohr maintains that, without a prompt transcript of the January 13 meeting, she could not prepare objections to the Board's order.  But the deadline for written objections had already expired in December 2022, weeks before that meeting.  Under the Board's rules then in effect, objections were due within fifteen days after service of a party's proposed order, and no rule allowed another round of objections to the final order.  *See* Dkt. No. 32-1, at PageID.195–96.  The document relevant to Rohr's rights was not a transcript of the meeting, but the Board's written final order.  Service of that order on February 2, 2023, triggered the thirty-day period for review, and the order contained

12

the findings and conclusions Rohr could challenge on appeal. *See* Haw. Rev. Stat. § 91-14(b). Rohr received the order, timely appealed it, and obtained review on the merits in state court. Dkt. Nos. 34-7, 34-8. Although an earlier transcript may have been useful to her, its absence did not deny her access to the Board's proceedings or to review of that decision after the fact.

Rohr's two post-vote requests also do not create a triable issue. Her first request—that the Board provide an expedited transcript to the Planning Department's counsel—was not a request for an auxiliary aid for Rohr herself. Section 35.160(b)(1) requires public entities to provide appropriate aids to individuals with disabilities; it does not allow one party to require that an aid be furnished to another party. As to Rohr's request for Member Wiseman's personal notes as "something in writing," the court need not decide whether an adjudicator's private notes could ever qualify as an auxiliary aid. It is enough that the Board provided other effective means for Rohr to review what occurred: a live-captioned video of the meeting was posted that same day, allowing her to review the proceedings at her own pace, and the written final order set out the Board's findings and conclusions. Because those materials provided an equally effective alternative, the Board was not required to furnish Member Wiseman's personal notes, even if they did qualify as an auxiliary aid. *See Updike*, 870 F.3d at 958; 28 C.F.R. § 35.160(b)(2).

13

Rohr also suggests that the Board violated its rules, or the ADA, by failing to circulate a Board-drafted proposed order before the January 13 meeting.  But the Board did not provide an advance draft to any party.  Rohr therefore identifies no information made available to others but withheld from her because of her disability.  Any procedural irregularity applied equally to all parties and cannot establish discrimination "by reason of" disability.  *See Updike*, 870 F.3d at 949.[4]

For these reasons, the court grants the Board's motion for summary judgment as to Rohr's claims based on the January 2023 meeting.

### 2.    Summary Judgment Is Warranted on Rohr's Claims Concerning the January 2024 Meeting

Rohr's claim arising from the January 12, 2024 meeting is twofold.  She contends that the Board failed to give primary consideration to her request for an entirely remote hearing and that the audio echo she experienced during her argument interfered with her concentration and advocacy.  The Board argues that an inability to concentrate does not fall within the effective-communication regulation because that regulation concerns barriers to exchanging information, not a participant's comprehension or subjective experience.  Dkt. No. 32-1, at PageID.200–02 (citing *Ickes v. Univ. of Cal. Coll. of the Law, S.F.*, No. 25-cv-05859-EMC, 2025 WL 3733531, at *8–10 (N.D. Cal. Dec. 27, 2025), *appeal*

---

[4]    Because the undisputed record establishes that Rohr was not denied the benefits of the Board's proceedings in BOA-1, the court need not reach the Board's alternative arguments, including its contention that the adoption of a final order is not a "service" within the meaning of Title II.

*docketed*, No. 26-16 (9th Cir. Jan. 2, 2026)).  The court need not resolve that broader legal question.  Even assuming Rohr's theory falls within § 35.160, her claim cannot prevail on the undisputed record.

First, the hybrid format provided by the Board was, on this record, equally effective as the all-Zoom format Rohr requested.  The Board was required to give primary consideration to her request, not necessarily to adopt her preferred format.  *See* 28 C.F.R. § 35.160(b)(2); *Updike*, 870 F.3d at 958.  In response to Rohr's accommodation letters, the Board convened a separate conference with Rohr and the County ADA Coordinator to discuss and test possible arrangements before the hearing.  It then designed a format around the features Rohr had identified as helpful.  As detailed above, laptops placed in front of the Chair, the Planning Department's table, and the witness stand gave Rohr close-up views of the speakers for lip-reading, while Zoom's instant-transcript feature provided a live written record on her own laptop.  That process reflects the individualized consideration contemplated by the regulation.  *See Duvall*, 260 F.3d at 1139.

After the accommodation conference, Rohr identified no specific problem with the proposed format.  She stated only that it remained "untried" under live conditions.  At the hearing, Rohr heard and responded to the Board, participated in a real-time colloquy, and promptly recognized when a Board member spoke away from his microphone.  January 12, 2024 Video at 56:03–56:33, 1:00:10.  Rohr states that the format

made it more difficult to read the lips of members other than the Chair, but she identifies no information she failed to receive as a result.  Title II required an equally effective opportunity to participate, not the precise format Rohr preferred.  *See Updike*, 870 F.3d at 958.

Second, the record does not support a finding that the echo created a "real hindrance" in the exchange of information.  *See Mayfield*, 131 F.4th at 1110.  The recording and transcript show that Rohr presented a sustained and substantive argument for approximately eight minutes and seventeen seconds, nearly three times the period allotted to each party.  January 12, 2024 Video at 45:44–54:43.  She cited legal authorities, responded directly to the Board's questions and statements, and identified no information from the meeting that she failed to receive.  The Board also had Rohr's written memorandum opposing the Planning Department's motion before the hearing, so oral argument was not the only means by which she communicated her position. The fact that the echo made Rohr's presentation more difficult or less comfortable does not, without more, establish that she was denied meaningful access.

Finally, the record shows that the echo arose from Rohr's earbuds, which she had not worn or discussed at the November 2023 accommodation conference.  She had also not told the Board that she needed amplification of her own voice while speaking.  The Board therefore had no reason to anticipate that receiving the live room audio and delayed Zoom audio at the same time would create feedback.  When the echo arose, the

16

Board's counsel identified its apparent source and suggested that Rohr remove the earbuds while she was the only person speaking. *Id*. at 46:52–47:12, 51:46–52:28. Rohr initially declined because she believed she would be unable to hear herself. *Id*. When she later removed them, she continued presenting her argument. *Id*. at 48:49. A public entity does not violate Title II when it offers a reasonable means of addressing a communication problem and the participant declines to use it. *See Memmer v. Marin County Courts*, 169 F.3d 630, 633–34 (9th Cir. 1999); *cf. Duvall*, 260 F.3d at 1138. And in this case, when Rohr ultimately chose to use it—when she removed her earbuds—the Board's recommended reasonable accommodation proved effective.

No reasonable jury could find that the Board denied Rohr effective communication—and with it, meaningful access—at the January 12, 2024 meeting. The court therefore grants the Board's motion for summary judgment against the claims based on this meeting.

### D.    Rohr Is Not Entitled to Summary Judgment

Rohr's motion for summary judgment is denied for the reasons already given. As the party who would bear the burden of proof at trial, Rohr "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The record described above does not permit that showing.

Because Rohr cannot establish a Title II violation, her claims fail in their entirety. But even if a violation could be found, her claims for compensatory damages would independently fail, because no reasonable jury could find deliberate indifference on this record. Deliberate indifference requires knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood that is more than negligent and involves an element of deliberateness. *Duvall*, 260 F.3d at 1139. The undisputed record shows a public entity that engaged with Rohr's requested accommodations. In BOA-1, the Board repeated and clarified motions on request, posted a captioned recording of the meeting that same day, and served a written final order. In BOA-2, it convened a pre-hearing conference with the County ADA Coordinator to test accommodations, built a hybrid format around the features Rohr identified as helpful, diagnosed the earbud echo in real time, offered an immediate remedy, and nearly tripled Rohr's argument time. On this record, the court cannot conclude the Board acted with deliberate indifference. *Id.*; *Updike*, 870 F.3d at 950-51.

## CONCLUSION

For the foregoing reasons, the court GRANTS the Board's Motion for Summary Judgment, Dkt. No. 32, and DENIES Rohr's Motion for Summary Judgment, Dkt. No. 40. The trial date and all remaining pretrial deadlines are VACATED. This resolves all pending motions. The Clerk of Court is directed to enter judgment in favor of the Board and to close the case.

18

IT IS SO ORDERED.

DATED:  July 27, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

*Rohr v. Board of Appeals;* Civil No. 25-00017 MWJS-WRP; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT